***********
The undersigned have reviewed the prior Opinion an Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant.
3. KEMPER INSURANCE COMPANY was the carrier on the risk for Employer-Defendant.
4. Plaintiff's average weekly wage for the 1997 injury is FIVE HUNDRED FORTY-FIVE AND 56/100 DOLLARS ($545.56) and for the 1999 injury is THREE HUNDRED FIFTY-TWO AND 78/100 DOLLARS ($352.78), as calculated from the Wage Chart provided by the Defendant.
5. Defendants deny Plaintiff contracted an occupational disease on or about April 1, 1997, or August 2, 1999.
6. Defendants deny any disease arose out of and in the course of employment, and therefore, no compensation is due.
7. Various medical records and other documents, including Plaintiff's personnel file of 117 pages, have been stipulated into evidence with the Pre-Hearing Agreement, as well as a videotape of the job Plaintiff was assigned to do on the alleged dates of injury.
8. The depositions of Dr. David Stanford Baker, II, Dr. John H. Piland, Dr. Steven B. Sanford, Dr. E. Brown Crosby, Alan C. Gerrod, Robin Gayle Ball, Donna Jean West, Randall David Heien, and Thurman Byron Roe were received into evidence.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Defendant operates a warehousing/wholesale distribution business of products sold in grocery-type retail stores. Plaintiff has worked for Defendant since 1987 in various positions, including Stocker and Picker/Selector.
2. The Stocker job involves the Plaintiff cutting open approximately 600 to 800 boxes a day with a box cutter or a razor knife. After the boxes are cut open, they are lifted and placed in shelves. The boxes weigh an average of approximately ten (10) pounds, but can weigh up to sixty (60) pounds on occasion. Plaintiff held this position off and on between January of 1997 and February of 1999. During this time period, the Plaintiff also held the position of Lift Operator wherein she operated a lift and did not open the boxes as is required by a Stocker.
3. The Picker/Selector job involves the Plaintiff standing in an aisle and selecting various items or pieces from shelves positioned at different height levels on one side of the aisle, and after selection of the items or pieces called for on the ticket held by her, Plaintiff then places the items or pieces in a plastic bin on the other side of the aisle. This job additionally requires Plaintiff to do some limited amount of walking in that Plaintiff must move down the aisle as she finds and picks product to place in the bins. Sometimes Plaintiff will place a label or sticker on the item or piece, and sometimes Plaintiff will put rubber bands around smaller items or pieces to hold them together. The rate of production for the Picker/Selector job is approximately 600 items per hour, or several thousand per day.
4. Plaintiff began seeing doctors in February of 1998 after complaining of pain in her arm and hand. She saw Dr. Mark Marchese on February 9, 1998, and based on nerve conduction studies performed, he diagnosed her with mild right carpal tunnel syndrome, but no left carpal tunnel syndrome. He did not make a diagnosis concerning either of her elbows. In February of 1999, the Plaintiff had surgery on her right elbow performed by Dr. Donald Campbell. In November of 1999, the Plaintiff saw Dr. John Piland. Dr. Piland has visited the plant and observed the Plaintiff's job. Thus, Dr. Piland is very familiar with the jobs of Stocker and Picker/Selector and does not consider either job to be repetitive because the jobs entail other aspects which are variable and, therefore, are not truly repetitive in such a way that would cause cumulative repetitive trauma to the upper extremities. He stated that even if Plaintiff reached on or into shelves and took off 4000 items a day, the job would have a repetitive aspect to it, but because of the other various activities involved in the job, it would not reach the level of repetition as would result in, or aggravate either lateral epicondylitis or carpal tunnel syndrome.
5. Plaintiff was seen by Dr. Stephen Sanford on January 14, 2000 for pain in her right elbow. Dr. Sanford, an orthopedic surgeon, is a specialist in hand, wrist and upper extremity care. He sees about ten (10) patients a day on average with carpal tunnel syndrome and two to three (2-3) patients a week with lateral epicondylitis. Dr. Sanford stated that the most common cause of carpal tunnel syndrome is idiopathic, or unknown. Dr. Sanford examined Plaintiff for left elbow pain and reviewed the videotape that was entered into evidence of the jobs of Picker/Selector and Stocker at defendant's place of employment. Dr. Sanford concluded and the undersigned find that these jobs were not causally related to Plaintiff's conditions and would not significantly aggravate lateral epicondylitis or carpal tunnel syndrome. Further, Dr. Sanford found and the undersigned find that Plaintiff's jobs did not place her at an increased risk of developing lateral epicondylitis as compared to the general population because Plaintiff's jobs were not highly repetitive and did not involve forceful motion of the wrist or elbow extension. Dr. Sanford stated that he did not examine Plaintiff for carpal tunnel syndrome, but he did find some symptomatology of this condition during his examination. Again, further, based on his discussion with Plaintiff of her job duties, the video he watched of her job duties, and the written job analysis received from defendant, it is his opinion and it is so found that the carpal tunnel syndrome was not caused or significantly aggravated by Plaintiff's job. The job did not demonstrate highly repetitive, forceful hand or wrist motion. Plaintiff's job duties did not put her at greater risk for carpal tunnel syndrome than the general population.
6. Six days after being treated by Dr. Sanford, Plaintiff was treated by Dr. Brown Crosby, to whom she was referred by her attorney. Dr. Crosby's notes indicated that Plaintiff was not very compliant with the home exercise program of physical therapy he had recommended Plaintiff follow in order to ease her condition. Dr. Crosby admitted that he had not read any ergonomics reports on jobs at defendant's place of employment; nor had he visited the job site. He also agreed that the more actions you can do with your arm and hand in terms of positioning them, the less likely you are to get a repetitive motion disorder than a person who does the same action in the same position time after time.
7. Allan Gerrod is an ergonomicist who evaluated and analyzed the jobs at defendant's plant on September 29, 1998. Mr. Gerrod found in his expert opinion that neither the Stocker nor the Picker/Selector job positions would place an employee at a statistically increased risk ergonomically for the development of a cumulative trauma disorder. This opinion was based on Mr. Gerrod's finding that key essential functions of the job duties did not involve a high amount of repetition or forceful activity.
8. Dr. David Baker, an orthopedic surgeon, reviewed the videotape of job duties of Stocker and Picker/Selector. He concluded that Plaintiff's job duties as a Picker/Selector and Stocker did not place her at an increased risk than the general public of contracting carpal tunnel syndrome. He stated that the jobs would not fall in the category of repetitious since they do not require the constant repetition of the same motions and activities over and over again. Dr. Baker also noted that carpal tunnel syndrome can and does occur in people with sedentary lifestyles who have no risk factors either on their jobs or otherwise. Thus, the fact that Plaintiff's treating doctors have not been able to attribute the Plaintiff's medical conditions to any specific etiology does not necessarily mean that the Plaintiff's job duties as Stocker or Picker/Selector either caused, aggravated, or placed the Plaintiff at a greater risk than the general population of contracting these conditions.
9. Accommodations for Plaintiff to return to work were made by assigning her job duties in the cafeteria where she could continue employment without overstepping job restrictions placed on her by her medical providers.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
Neither on April 1, 1997, nor on August 2, 1999, did Plaintiff contract an occupational disease. Plaintiff's medical conditions were not caused by her employment with defendant and were not aggravated by her employment with defendant, and she was not placed at greater risk of contracting or aggravating her conditions by her employment at defendant. Therefore, Plaintiff is entitled to no compensation under the Workers' Compensation Act. N.C. GEN. STAT. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of August 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/________________ BERNADINE BALLANCE COMMISSIONER
DCS/bjp